IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARECENTRIX, INC. and<br>NDES HOLDINGS, LLC,<br><br>          Plaintiffs,<br><br>v.<br><br>MARCUS LANZNAR and<br>SIGNIFY HEALTH, LLC,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 20-1765 (LPS)<br>)<br>) REDACTED -<br>) PUBLIC VERSION<br>)<br>)<br>)<br>) |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

SHAW KELLER LLP
Karen E. Keller (#4489)
Nathan R. Hoeschen (#6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
shoeschen@shawkeller.com

*Attorneys for Defendant Marcus Lanznar*

OF COUNSEL:

Justin Sher
Heather Han
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, NY 10004
(212) 202-2600

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendant Signify Health, LLC*

OF COUNSEL:

Ashok Ramani
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000

Dana M. Seshens
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

Original filing date: May 24, 2021
Redacted filing date: June 1, 2021

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

TABLE OF ABBREVIATIONS ................................................................................................. iii

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I. PLAINTIFFS REMAIN UNLIKELY TO SUCCEED ON THE MERITS OF THEIR NON-COMPETE CLAIMS ......................................................................................2

    A. CareCentrix and Signify Are Not Competitors...........................................................3

    B. CareCentrix and Signify at Most Are Potential Competitors ....................................6

II. PLAINTIFFS HAVE NOT IDENTIFIED ANY EVIDENCE OF TRADE-SECRET MISAPPROPRIATION ......................................................................................7

III. PLAINTIFFS' CLAIMED CONTRADICTIONS ARE BASELESS ................................9

CONCLUSION ..............................................................................................................................10

TABLE OF AUTHORITIES

Page(s)

CASES

*W.L. Gore & Assocs. v. Wu*,
    2006 WL 2692584 (Del. Ch. Sept. 15, 2006) ............................................................................ 9

OTHER AUTHORITIES

Manatt, Phelps & Phillips, LLP,
    *HIPAA and Emerging Technologies: Protecting Privacy
    When Communicating in the Digital Age* (June 6, 2017) .......................................................... 9

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| BPCI-A | Bundled Payments for Care Improvement Advanced |
| Boumenot Decl. | Declaration of Peter Boumenot in Support of Defendants' Answering Brief in Opposition to Plaintiffs' Renewed Motion for Preliminary Injunction |
| CMS | Centers for Medicare & Medicaid Services |
| DME | Durable Medical Equipment |
| ECS | Episodes of Care Services |
| Harwell Ex(s). | Exhibit(s) attached to the Declarations of Jefferson Harwell in Support of Plaintiffs' Renewed Motion for Preliminary Injunction |
| Opp. | Defendants' Answering Brief in Opposition to Plaintiffs' Renewed Motion for Preliminary Injunction |
| PAC | Post-Acute Care |
| Park Ex(s). | Exhibit(s) attached to the Declarations of James Y. Park in Support of Defendants' Answering and Supplemental Briefs in Opposition to Plaintiffs' Renewed Motion for Preliminary Injunction |
| PI Br. | Plaintiffs' Opening Brief in Support of Renewed Motion for Preliminary Injunction |
| S-1 | Signify Health Form S-1 Securities and Exchange Commission Filing, January 19, 2021, available at https://sec.report/Document/0001193125-21-011608/d12124ds1.htm. |
| Suppl. Br. | Plaintiffs' Supplemental Brief in Support of Renewed Motion for Preliminary Injunction |
| Tenn Decl. | Expert Declaration of Dr. Steven Tenn, Ph.D., in Support of Defendants' Answering Brief in Opposition to Plaintiffs' Renewed Motion for Preliminary Injunction |
| TTH | Transition to Home |
| UM | Utilization Management |
| Wogen Decl. | Declaration of Stephen Wogen in Support of Plaintiffs' Renewed Motion for Preliminary Injunction |

**INTRODUCTION**

Plaintiffs' Supplemental Brief confirms that they have no evidence of trade-secret misappropriation by Mr. Lanznar or Signify.  After moving the Court for the production of *all* of Mr. Lanznar's Signify emails for the four-month period he was working—in addition to the more than 160,000 documents Defendants had already produced—Plaintiffs came up empty.  That is why their Supplemental Brief focuses almost entirely on whether CareCentrix and Signify compete and takes meritless shots at Defendants' credibility.  Plaintiffs seek to obscure the fact that there is no basis for their claims and no support for their preliminary-injunction motion.

Out of the nearly 12,000 additional emails Signify produced, Plaintiffs identify *two* that they claim reflect trade secrets.  They plainly do not: ███████████████████████████████████████████████████████████████████████████  Neither is confidential, neither reflects or reveals confidential CareCentrix information, and neither demonstrates *any* use of CareCentrix confidential information by Mr. Lanznar or Signify.

Plaintiffs' attempt to paint CareCentrix and Signify as actual competitors fares no better.  Plaintiffs ignore their own Chief Growth Officer's testimony that ███████████████ ██████████████████████████  Signify's Chief Product Officer, Peter Boumenot, testified ██████  Instead, Plaintiffs misdescribe documents, misstate the nature of Signify's products and offerings, and cherry-pick language out of unrelated documents to weave a fanciful tale of supposed competition when there is none.  The documents on which Plaintiffs rely—some of which were produced months ago—show nothing more than what Signify explained in its Opposition:  at most Signify is a potential future competitor of CareCentrix.  There is no evidence that the two companies compete now or that they will do so imminently.

1

Notwithstanding Signify's 12,000-email supplemental production, this case remains unchanged.  Mr. Lanznar is still on administrative leave and may not contact anyone at Signify or access Signify's network.  His personal devices and accounts remain locked down.  There is still "no evidence," as CareCentrix's Mr. Wogen stated, of irreparable harm and no instance where CareCentrix has lost business or a customer to Signify.  Opp. at 14.  Nearly all of Plaintiffs' requests for injunctive relief remain moot, except for CareCentrix's unfounded request for anticompetitive restraints against Signify.  *Id.*  Indeed, the only thing that has changed since the parties' initial briefing is the hearing date—which Plaintiffs unilaterally asked to postpone shortly after telling the Court that any "delay" would "imperil[] [their] ability to get emergency injunctive relief."  Park Ex. 36 at 15:3–6; D.I. 119.

Despite their claim that "CareCentrix now faces the real and imminent threat of undisputed, irreparable harm," Suppl. Br. at 10, Plaintiffs have not presented evidence of ***any*** harm, let alone harm that is imminent and irreparable.  Nor have they identified any documents out of all the recent additional discovery they have received that improve their likelihood of success on the merits.  Plaintiffs' Motion should be denied.

## ARGUMENT

**I.  PLAINTIFFS REMAIN UNLIKELY TO SUCCEED ON THE MERITS OF THEIR NON-COMPETE CLAIMS**

Plaintiffs spend most of their Supplemental Brief arguing that Mr. Lanznar's "withheld emails . . . prove that Signify and CareCentrix are competitors."  Suppl. Br. at 2.  As a preliminary matter, Defendants never "withheld" emails that were subject to production.  Prior to the Court's April 23, 2021 Order, Defendants searched for and produced documents from Mr. Lanznar's Signify email that were responsive to Plaintiffs' requests.  Any unproduced documents were not "withheld"; they were not responsive.  Within days of the Court's April 23,

2

2021 Order, Signify produced nearly 12,000 non-privileged emails from Mr. Lanznar. Plaintiffs now possess virtually every communication from Mr. Lanznar while he was at Signify (and before), and they still cannot demonstrate that Signify and CareCentrix compete. That is because they do not.

### A.   CareCentrix and Signify Are Not Competitors

Based on the testimony of Signify's Chief Product Officer, and its January 2021 S-1 filing with the SEC, Signify recounted in detail in its Opposition the business segments, products, and offerings that comprise its business. Opp. at 3–7. A comparison of Signify's business, products, and offerings to those of CareCentrix demonstrates that there is no overlap. *Id*. at 18–21. Signify and CareCentrix simply have not competed and do not compete for business or for customers. Opp. at 19.

As Signify noted in its Opposition, the only area of potential overlap between the two companies is in post-acute care. *Id.* at 20. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See id*. at 7–8; Wogen Decl. ¶¶ 47–48. Rather, Signify provides certain post-acute-care services as part of its episode-of-care offerings to BPCI-A—and not health-plan—customers. Opp. at 3–7. Thus, Signify does not sell to health plans, and health-plan customers cannot buy from Signify, a comprehensive post-acute-care offering.

As further explained in its Opposition, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Opp. at 20; *see also* Boumenot Decl. ¶¶ 31–33. As Mr. Boumenot explained, however, Signify ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Boumenot Decl. ¶ 31. As a result, Signify, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

3

███████████████████████████████████   *Id.* ¶ 32.   ███████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████   *Id.*; Park Ex. 37; Park Ex. 38.  Signify ███████████████

███████████████████████████████████████████████████████████████████

Boumenot Decl. ¶ 33.

Notwithstanding these uncontroverted facts, CareCentrix tries to paint a misleading picture of Signify's ████████████████████████████████████████, claiming that numerous related documents evidence actual competition between the two companies.  *See e.g.*, Harwell Exs., 188, 191–95, 197–199, 238.  Given that Signify ███████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ documents concerning these considerations are irrelevant to whether Signify and CareCentrix compete.[1]

For example, Plaintiffs cite Harwell Exhibit 191 because it describes ███████████ ████████████████████████████████████████████████████████ Suppl. Br. at 3 (citing Harwell Ex. 191).  But that document does not identify ██████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████ Harwell Ex. 191 at 6.  Plaintiffs also cite a single page of Harwell Exhibit 192 to show that █████████████████████████████████ ████████████████████████████████ (Suppl. Br. at 3 (citing Harwell Ex. 192)), but

---

[1] Because Defendants do not offer a comprehensive, end-to-end post-acute-care offering to health plan customers, Plaintiffs assert that Mr. Lanznar led "efforts to improve existing PAC management **services**" that "overlap" with CareCentrix's **products**.  This is the same "point solutions" argument Plaintiffs made in their Opening Brief (PI Br. at 18), and it lacks merit for the same reasons identified in Defendants' Opposition.  Opp. at 20–21.

4

they omit all of the other pages that demonstrate that this is ███████████████████████████████████████████████████████ Park Ex. 39 at 3, 8, 11, 12.[2] None of that happened.

Plaintiffs also cite documents discussing ████████████████████ ██████████████████████ as evidence of competition. *See, e.g.*, Harwell Exhibits 208, 212, 215, 216. ████████████████████ (Opp. at 7), and these documents have nothing to do with any post-acute-care offering for health plans. For example, Plaintiffs argue that Harwell Exhibits 215 and 216 show that Mr. Lanznar helped prepare a presentation where ███████████████████████████████████████████████████████ Suppl. Br. at 5. But, as the document makes clear, Signify was ███████████████████████████████████████████████████ ████████████████████████████████ neither of which is at all related to a comprehensive post-acute-care offering for health plans. Harwell Ex. 215 at 2599, 2611; *see also* Opp. at 4–5, 7.

Finally, Plaintiffs cite numerous documents that have nothing to do with post-acute care as evidence of supposed competition. These include documents concerning ████████ ███████████████████████████████████████ (Harwell Exs. 190, 200, 218–220, 225, 232–233), as well as ████████████████████████

---

[2] Plaintiffs similarly provide only one page of Harwell Ex. 193, claiming that Mr. Lanznar was "briefed" in November 2020 that ████████████ Suppl. Br. at 3. As the full document shows, however, the presentation— ███████████████████████████████████ Park. Ex. 42 at 11–20. The deck contains a single reference to ████ *Id.* at 5, 26.

███████ (Harwell Exs. 223, 239). For example, Harwell Exhibit 239 relates to ███████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ Harwell

Ex. 239 at 7379–80; *see* Park Ex. 40 at 46:23–47:25. The document has nothing to do with a comprehensive post-acute-care offering.

**B.    CareCentrix and Signify at Most Are Potential Competitors**

Plaintiffs' Supplemental Brief acknowledges that CareCentrix and Signify do not actually compete. For example, Plaintiffs reference Signify's "***continued pursuit*** of a comprehensive PAC offering" and claim that Mr. Lanznar "went from leading CareCentrix's PAC ***Program*** to immediately leading Signify's PAC ***strategy***." Suppl. Br. at 2, 4 (emphases added). A "continued pursuit" and a "strategy" are not the same as actual competition. But, as Defendants noted in their Opposition, it does not matter to Plaintiffs whether Signify is ███████████ ███████████ Opp. at 22 (quoting Park Ex. 41 at 234:17–235:4). So long as there is a ███████████████████████████████████████████████████████████████████████████████ Park Ex. 41 at 234:17–235:4.

Plaintiffs have to blur the line between actual and potential competition to pursue their non-compete claims.[3] To do so, Plaintiffs cite a number of ███████████████ documents from after December 1, 2020, and construe them as evidence of actual competition. *See*, *e.g.*, Harwell Exs. 202–04, 206, 207, 209–211, 214, 235, 240.[4] For example, Harwell

---

[3] The restrictive covenants that CareCentrix claims Mr. Lanznar breached restrict or limit him in connection with working for a CareCentrix "competitor." The only restriction with respect to a "potential competitor" is for Mr. Lanznar not to divulge the names of CareCentrix clients or employees for one year (he has not done so). Harwell Ex. 2 § 9; Opp. at 22.

[4] Plaintiffs claim that Signify withheld these documents from its competition expert, Dr. Tenn, such that his opinions should be given no weight. Suppl. Br. at 6. That assertion is baseless, as

6

Exhibits 202 and 203 are ▉▉▉ Harwell Exs. 202, 203.  Plaintiffs also cite Harwell Exhibit 214, a Signify ▉▉▉ Suppl. Br. at 5.  But the language they quote refers to ▉▉▉ *see* Harwell Ex. 214, and Signify's ▉▉▉ Opp. at 20.

Plaintiffs also cite a number of ▉▉▉ as proof that Signify is moving into CareCentrix's market.  *See e.g.*, Harwell Exs. 234, 236–37.  Putting aside that there is no bar on competition between Signify and CareCentrix, the documents Plaintiffs cite do not reveal ▉▉▉ Plaintiffs describe one document as showing that Signify was ▉▉▉ Suppl. Br. at 10; Harwell Ex. 234.  But this document identifies ▉▉▉ Suppl. Br. at 10.

## II.   PLAINTIFFS HAVE NOT IDENTIFIED ANY EVIDENCE OF TRADE-SECRET MISAPPROPRIATION

As Defendants explained in their Opposition, Plaintiffs failed to show any use or disclosure of CareCentrix proprietary information by Mr. Lanznar or Signify.  Opp. at 24–29.  Dissatisfied with their record, Plaintiffs urged the Court to order the production of Mr. Lanznar's

---

these documents are all cumulative of the documents that Dr. Tenn reviewed.  *E.g.*, Tenn Decl. ¶¶ 167–183 (reviewing internal documents from both companies that confirm that Signify and CareCentrix are at most potential and not actual competitors).

7

entire Signify email account based on their belief that "there is much more information" in those emails "related to CareCentrix's documents" and that Mr. Lanznar "[revealed] information that . . . originates from his work at CareCentrix."  Park Ex. 36 at 5:15–17, 7:2–4.  After production of nearly 12,000 documents from Mr. Lanznar's Signify email account, Plaintiffs have come up empty.

Plaintiffs cite only two emails out of the thousands to support their claim that Mr. Lanznar misappropriated CareCentrix trade secrets (Suppl. Br. at 7–8), but neither contains any proprietary information or suggests that any such information was disseminated.  In the first email, a Signify employee asks Mr. Lanznar fo█████████████████████████████ █████████████████████████████████ █████████ █████████████████████████████████████ █ █████████████████████████████████████████ █████████████████████████████████████████ █████████████████ █████████████████████ Harwell Ex. 189.  Nothing about this email is specific to CareCentrix.  Indeed, Mr. Lanznar's past experience is broader than his time at CareCentrix, and ███████████████████ ██████████████████████████████████████████████████████████████ Plaintiffs' suggestion that "Lanznar likely misappropriated" CareCentrix's trade secret relating to its ████████████████████████████████████████ in a subsequent call (Suppl. Br. at 7) is pure speculation and untrue.

The second email Plaintiffs cite is equally underwhelming.  There, Mr. Lanznar explains to another Signify employee ██████████████████████████████████████ ██████████████████████████████████████████████████████████

8



Harwell Ex. 229.

[5]

Finally, Plaintiffs again claim that the inevitable disclosure doctrine should apply. Suppl. Br. 7–9. But neither of the two emails just discussed (or any of the other nearly 12,000 emails Signify produced), nor the inaccurate description of Signify's business and Mr. Lanznar's responsibilities, *see* Part I, *supra*, suggest "a significant risk" that he would disclose CareCentrix trade secrets merely by working at Signify. *See W.L. Gore & Assocs. v. Wu*, 2006 WL 2692584, at *13 (Del. Ch. Sept. 15, 2006). Indeed, with Mr. Lanznar currently on administrative leave, the opposite is true: there is **no** risk of disclosure of any supposed trade secrets. Even if the doctrine were to apply, the only reasonable remedy would be to enforce the non-compete for its intended duration—here, nine months, but in all events no longer than a year. *See* Opp. at 17, 29–30.

### III. PLAINTIFFS' CLAIMED CONTRADICTIONS ARE BASELESS

In accusing Defendants of "lacking credibility," Plaintiffs ironically put their own credibility at issue by misdescribing several sets of documents and distorting the record. For example, Plaintiffs repeatedly claim ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Suppl. Br. at 5, 9)—as part of their "showing" that Signify and CareCentrix compete—even though they know that is wrong: CareCentrix's own Chief Growth Officer testified ▮▮▮▮▮▮▮▮▮▮ (*see* Park Ex. 41 at 118:18–119:13). Plaintiffs also repeatedly misconstrue documents

---

[5] *See, e.g.*, Manatt, Phelps & Phillips, LLP, HIPAA and Emerging Technologies: Protecting Privacy When Communicating in the Digital Age (June 6, 2017), at 40–43, *available at* https://www.manatt.com/getattachment/fe93e343-a392-4013-bc4e-d703426e7adc/attachment.aspx.

9

concerning ███████████████████████████████████████████, suggesting that somehow constitutes evidence of Mr. Lanznar's work on post-acute care simply because █ ███████████████████████████████████  See Suppl. Br. at 9; Harwell Ex. 223; Park Ex. 40 at 36:22–47:7.  Plaintiffs also claim that, contrary to Signify's sworn testimony and public disclosures, Signify offers ████████████████████████████████████████████ ██████████████████████████████████████████████████ See Suppl. Br. at 10 (citing Harwell Ex. 237).

Plaintiffs' accusations about Defendants' credibility lack any merit.  Plaintiffs claim that Mr. Lanznar violated the parties' January 2021 "Standstill Agreement" by continuing to █ █████████  See Suppl. Br. at 9.  But there was no blanket prohibition on Mr. Lanznar ████████████; rather, he was permitted to ██████████ in connection with Signify's transition-to-home, in-home evaluation, and community care offerings.  (D.I. 21 ¶¶ 2–3.)  Mr. Lanznar's work on the ████████████████████████████████████ ████████████████████████ fall squarely within these areas.  See Harwell Exs. 190, 219, 223, 225, 233.  Plaintiffs also claim that Defendants misrepresented that Signify ███████ ██████████████████████████████████████████████ Suppl. Br. at 10 (quoting Opp. at 5).  But the documents on which Plaintiffs rely either are unrelated to ███████ ██████ (see Harwell Ex. 188, 222), or concern ████████████████████ (Harwell Ex. 214).  Indeed, Mr. Boumenot testified that ███████████████████████████████ ██████████████████████████████████████████████████ █████████ Boumenot Decl. ¶ 17.

## CONCLUSION

Defendants submit that Plaintiffs' preliminary injunction motion should be denied.

10

| | |
|---|---|
| SHAW KELLER LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| /s/ *Nathan R. Hoeschen* | /s/ *Jack B. Blumenfeld* |
| _____ | _____ |
| Karen E. Keller (#4489)<br>Nathan R. Hoeschen (#6232)<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>kkeller@shawkeller.com<br>shoeschen@shawkeller.com | Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com |
| *Attorneys for Defendant Marcus Lanznar* | *Attorneys for Defendant Signify Health, LLC* |
| OF COUNSEL: | OF COUNSEL: |
| Justin Sher<br>Heather Han<br>SHER TREMONTE LLP<br>90 Broad Street, 23rd Floor<br>New York, NY 10004<br>(212) 202-2600 | Ashok Ramani<br>DAVIS POLK & WARDWELL LLP<br>1600 El Camino Real<br>Menlo Park, CA 94025<br>(650) 752-2000 |
| | Dana M. Seshens<br>DAVIS POLK & WARDWELL LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>(212) 450-4000 |
| May 24, 2021 | |

11